Robert Grady JOHNSON, Petitioner–Appellant,

v.

Ron CHAMPION, Respondent–Appellee.

No. 01–6183.

United States Court of Appeals, Tenth Circuit.

April 26, 2002.

Michael J. Barta and Kelli C. McTaggart, Baker Botts L.L.P., Washington, DC, on the brief for Petitioner–Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma, and Diane L. Slayton, Assistant Attorney General, Oklahoma City, OK, on the brief for Respondent–Appellee.

Before KELLY, HOLLOWAY, and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Petitioner Robert Grady Johnson, an Oklahoma state prisoner serving four consecutive life sentences for four counts of first degree felony murder, appeals the district court's dismissal of his 28 U.S.C. § 2254 habeas petition. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, reverse the judgment of the district court, and remand with instructions to grant conditional habeas relief to Johnson.

## I.

On December 14, 1984, during a robbery at the First Bank of Chattanooga in Geronimo, Oklahoma, three bank employees and one bank customer were killed. Three other bank customers were shot and severely wounded, and there was an unsuccessful attempt to shoot an infant girl. Johnson and Jay Wesley Neill were arrested and charged with the offenses in the District Court of Comanche County, Oklahoma. Johnson and Neill were tried together in May 1985 and each was convicted of four counts of first degree murder, three counts of shooting with intent to kill, and one count of attempted shooting with intent to kill. The jury recommended death sentences for Johnson and Neill on each of the murder counts. On direct appeal, the Oklahoma Court of Criminal Appeals (OCCA) reversed the convictions and sentences and remanded the cases for new trials, concluding that Johnson and Neill were improperly tried together because Johnson's and Neill's defenses were mutually antagonistic—each defendant asserted the other was solely responsible for commission of the offenses. *Neill v. State,* 827 P.2d 884, 887–88 (Okla.Crim.App. 1992).

In 1993, Johnson was separately retried and convicted of the same eight crimes.

He was sentenced to four life sentences without parole on the murder counts, three twenty-year sentences on the shooting with intent to kill counts, and a ten-year sentence on the attempted shooting count, with all sentences to be served consecutively. The trial court entered judgment on July 28, 1993.

On August 5, 1993, Johnson's trial counsel filed a notice of intent to appeal and a designation of record in the state district court. An attorney employed by the Oklahoma Indigent Defense System (OIDS) was appointed to represent Johnson on appeal. On October 26, 1993, the attorney filed a petition in error on Johnson's behalf with the OCCA. Another OIDS attorney was appointed to represent Johnson after the first attorney withdrew.

After the filing of Johnson's petition in error, the OCCA granted the court reporter three sixty-day extensions to file the trial transcripts (under Oklahoma law, the filing of the trial transcripts triggered the deadline for a criminal defendant to file his or her appellate brief). The third extension was granted after a show cause hearing on January 12, 1994, attended by the court reporter and Johnson's counsel. On March 15 and 17, 1994, the court reporter filed the trial transcripts with the OCCA. According to Johnson, a notice of the filing was sent to the attorney general's office, but not to Johnson's counsel.

Approximately seven months passed after the filing of the transcripts without the filing of an appellate brief on Johnson's behalf. On October 19, 1994, the OCCA, acting sua sponte, entered an order dismissing Johnson's appeal for failure to comply with Rule 3.4 of the Rules of the Court of Criminal Appeals.[1]

---

**1.** At that time, Rule 3.4 provided, in pertinent part, that "[u]nless otherwise ordered . . ., the appellant's brief must be filed within sixty

(60) days from the date the appeal is perfected by the filing of the petition in error, the certified copy of the original record, and an

On November 17, 1994, Johnson's counsel filed with the OCCA a motion to reinstate the appeal. Counsel claimed that a notice of completion of the transcripts had not been filed with the OCCA, and thus the sixty-day time period for filing a brief had not started. On December 29, 1994, the OCCA denied the motion to reinstate the appeal, finding that "[t]he transcripts were filed with the Clerk of this Court on March 15, 1994 and March 17, 1994, and the court reporter filed a notice of completion with the Clerk of this Court on March 17, 1994." App. at 326. The OCCA further noted that, under its rules, it was Johnson's attorney's responsibility "to ensure the records necessary for commencing the appeal [we]re completed and filed in a timely manner." *Id.* The OCCA concluded that "the only remedy available to [Johnson] upon dismissal of his appeal [wa]s to obtain an appeal out of time" by first filing an application for post-conviction relief in state district court and "requesting an appeal out of time." *Id.* at 326–27.

On April 13, 1995, Johnson's counsel requested a "recommendation for a late appeal" from the state district court *Id.* at 329. The request stated that Johnson's appeal was dismissed "[b]ecause of a misunderstanding as to when the appellate brief was due." *Id.* The request was denied on June 20, 1995.

On or about August 16, 1995, Johnson's counsel filed an application for appeal out of time. The OCCA denied the application on September 15, 1995, noting that the application "set[ ] forth no facts to support" the contentions that Johnson "always desired to appeal his conviction," "never consented to the abandonment of the appeal," and "ha[d] been denied an appeal through no fault of his own." *Id.* at 334.

The OCCA again emphasized that "the proper procedure [wa]s to file an application for post-conviction relief in [state] District Court requesting an appeal out of time." *Id.* The OCCA further emphasized that the granting of such relief would depend upon Johnson's "ability to prove he was denied an appeal through no fault of his own." *Id.*

On October 16, 1995, Johnson's counsel filed an application for post-conviction relief in state district court asserting that Johnson "still desire[d] to appeal his conviction and ha[d] never agreed to abandon his appeal." *Id.* at 53. The application further stated that Johnson's counsel "acknowledge[d] that the appeal was dismissed for failure to file a brief, and through no fault" of Johnson. *Id.* The state district court denied the application on December 29, 1995, concluding that Johnson had "failed to substantiate any sufficient reason ... for his failure to file a direct appeal," and had likewise "failed to substantiate any sufficient evidence that [his] counsel's conduct fell outside the wide range of reasonable professional assistance." *Id.* at 55. The court further concluded that Johnson had "failed to show that counsel's performance was deficient, that is, that ... counsel's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," or "that any such deficient performance resulted in a trial in which result was not reliable." *Id.* at 55–56. The state district court "denie[d] the ... Application ... in regard to the proposition of ineffective assistance of counsel." *Id.* at 56.

Johnson appealed the denial of his application for post-conviction relief. He asserted generally that "[a] criminal defen-

original and one (1) copy of the transcript." Okla. Stat. tit. 22, Ch. 18 App. Rule 3.4(B)

(1986).

dant is entitled to effective assistance of counsel on first appeal as of right and he is entitled to appeal out of time when denied effective assistance of counsel to perfect direct appeal." *Id.* at 46. Johnson then asserted, as he had in state district court, that his original appeal was dismissed due to his attorney's "failure to file a brief, and through no fault of" his own. *Id.* at 45. More specifically, Johnson alleged that "the failure to file the brief was through a misunderstanding [on the part of his counsel] as to when the brief was due." *Id.* at 47. On April 4, 1996, the OCCA remanded the case to state district court with directions to conduct an evidentiary hearing to determine (1) whether Johnson's "appeal was not timely perfected because of appellate counsel"; (2) "if so, whether [Johnson] was any part of the problem"; and (3) whether Johnson "ha[d] been denied an appeal through no fault of his own." *Id.* at 37.

The state district court conducted an evidentiary hearing on June 25, 1996. After hearing brief testimony from Johnson, the court found that Johnson's appeal was not timely perfected "because of appellate counsel" (presumably meaning that appellate counsel was negligent in failing to timely file a brief). *Id.* at 374. The court also found that Johnson "contributed to the negligence involved in failing to timely perfect his appeal." *Id.* at 375. In support of this finding, the court noted that (a) Johnson had "previously been convicted on two separate occasions and had been advised twice of his rights to appeal, including the time limits on appeal," *id.* at 374–75, (b) Johnson had written at least two letters to the state district court and had thus "shown the ability to communicate and inquire as to his status with th[e] Court," *id.* at 375, and (c) Johnson "made no inquiry of this Court or the Court of Criminal Appeals about the status of his appeal" during the time period from March 17, 1994 (when the court reporter

filed the transcripts with the OCCA) and October 17, 1994 (when the OCCA dismissed the appeal). *Id.* The court concluded that all of these factors were "circumstantial evidence from which [it] c[ould] conclude that there was an intent by [Johnson] and/or his counsel to abandon this appeal," and that the statements of Johnson and his counsel to the contrary were "not sufficient . . . to overcome the enormous time lapse which [it] f[ou]nd indicate[d] that the appeal was abandoned." *Id.* at 376. The state district court concluded by addressing Johnson and his counsel directly:

Mr. Johnson, you've not met [your] burden. Your mere words alone are not sufficient .for this Court to overlook the tremendous amount of time that went by between the date of the deadline and the date of any actual filing in this case. This case is—I've been on the bench 14 years and this case has been pending for 12 of them. I think you recall we started this case together and now it's 12 years later and we're still doing this. You know, enough is enough at some point.

And, [counsel], I don't quite—I quite frankly don't know what to say to you. I know that the people who we work for don't expect perfection in this criminal justice system, no do they get it very often, but I do think they expect some accountability and some finality in these criminal cases and this case is a poor example of the accountability and finality in the criminal justice system, and I'm not going to be a rubber stamp and allow this sort of thing to go on in this case. I know I can't cure that statewide and by the letter that I got from you early in this case, apparently this is a very common practice, but in this case it's not going to happen. If the Court of Criminal Appeals tells me that I have to grant this defendant an appeal out of

time, then I'll respect that and abide by it.

But based on the history of this case, the overwhelming evidence of guilt in this matter, the findings that I've made today, the defendant is denied his request for appeal out of time.

*Id.* at 376–77.

Shortly after the evidentiary hearing, the state district court issued a written order concluding, in pertinent part, that "[n]either [Johnson] nor his appellate Counsel ha[d] acted with reasonable diligence and both ha[d] now caused, intentionally, in this Court's opinion, over two years of unnecessary and inexcusable delay in the appellate history of this case." *Id.* at 39. More specifically, the court concluded that Johnson's "inaction [wa]s consistent with abandonment of his appeal." *Id.* Accordingly, the court concluded that Johnson "ha[d] delayed the appellate issues in this case for an unnecessary length of time and ha[d] therefore forfeited his right to raise these issues in a post-conviction proceeding." *Id.* at 40.

Johnson appealed to the OCCA, arguing that the evidence established he was denied an appeal through no fault of his own. In connection with this argument, Johnson asserted that the state district court's "finding of contributory negligence [on his part] [wa]s supported by neither law or evidence." *Id.* at 341. According to Johnson, "the law impose[d] no duty on a defendant, as opposed to his attorney, to see that his appeal [wa]s filed on time." *Id.* Johnson noted the rules of the OCCA "forbid a defendant from filing any pro se brief or legal argument if … represented by counsel." *Id.* The OCCA denied relief on December 2, 1996. Its order recited in detail the state district court's findings of fact and conclusions of law and concluded that the record failed to establish "that the District Court erred in its findings and conclusions denying [Johnson] post-convic-

tion relief." *Id.* at 358. Although the order acknowledged that OCCA rules generally prohibited "any pro se legal arguments," it nevertheless concluded that the rule did "not prohibit any appellant who [wa]s represented by counsel from seeking extraordinary relief in the District Court or in [the OCCA] when it is apparent the appeal is in jeopardy because of counsel's failure to act in a timely manner." *Id.* Therefore, Johnson had "failed to establish that he was denied an appeal of his conviction through no fault of his own." *Id.*

On January 15, 1997, Johnson, appearing pro se (having lost the right to court-appointed counsel), filed a petition for federal habeas relief asserting that he had been denied the right to appeal his convictions. The magistrate court issued a written report on January 15, 1998, recommending that the writ be granted. The magistrate construed Johnson's petition as "alleg[ing] the denial of due process based on the ineffective assistance of counsel in failing to perfect his direct appeal." *Id.* at 79–80. The magistrate noted it was undisputed that Johnson's claim "was raised and addressed on the merits by both the state district court and the [OCCA]." *Id.* at 83. As for the merits of the claim, the magistrate concluded that "counsel's failure to perfect [Johnson's] direct appeal violated [Johnson's] constitutional right to effective assistance of counsel." *Id.* at 86. More specifically, the magistrate noted that Johnson's "[a]ppointed counsel ha[d] continually conceded that [Johnson] ha[d] been denied an appeal based on counsel's own failure to perfect the appeal by timely filing an appellate brief," and that "[n]othing in the record suggest[ed] that the failure to file a timely brief was due to any action or inaction by [Johnson]." *Id.* at 88–89. As for the state courts' conclusion that Johnson was partly responsible, the magistrate concluded that "[i]n light of the relevant Supreme Court law regarding

[Johnson's] federal constitutional right to effective counsel on appeal, ... the reasoning of the state courts that [Johnson] had abandoned his appeal is so clearly incorrect that it would not be debatable among reasonable jurists." *Id.* at 89.

Respondent objected to the magistrate's report and recommendation, arguing that Johnson's petition "did not allege a denial of due process or ineffective assistance of counsel," *id.* at 92, and that, in any event, Johnson had never presented these constitutional claims to the Oklahoma state courts for review. The district court issued a written order on April 23, 1998, concluding that Johnson had "failed to exhaust his state court remedies regarding the constitutional claim at issue here [i.e., ineffective assistance of counsel]." *Id.* at 126. The court's order dismissed Johnson's petition without prejudice "so that [Johnson could] present his constitutional claim ... to the state courts." *Id.*

On or about May 27, 1998, Johnson, continuing to appear pro se, filed a second application for state post-conviction relief asserting, in pertinent part, that his appellate counsel had been ineffective for failing to timely file an appellate brief. On June 26, 1998, the state district court denied Johnson's application, concluding

> as it did on July 1, 1996, that [Johnson] ha[d] engaged in a deliberate and intentional course of conduct designed to delay final judgment of the convictions in this case, and further that this delay is an extreme injustice to the State of Oklahoma and particularly to the victim's families, who have now been required to endure almost fourteen years without a final result to this case.

*Id.* at 262. The court further concluded the application should be dismissed be-cause it "raise[d] issues which were or could have been raised in his first application for post conviction relief and since this Court has previously conducted an evidentiary hearing and specially found that [Johnson] was not denied a direct appeal of his convictions through no fault of his own." *Id.* A "true and correct" copy (but apparently not a certified copy) of the state district court's order was mailed by the court clerk to Johnson via certified mail. *Id.*

On July 8, 1998, Johnson filed a notice of intent to appeal and designation of record with the state district court clerk. On July 23, 1998, Johnson filed with the OCCA a petition in error and supporting brief. Johnson failed, however, to include with his petition in error a certified copy of the state district court's order, as required by Rule 5.2(C)(2) of the Rules of the Court of Criminal Appeals.[2] According to Johnson, he was never in possession of a certified copy of the state district court's order.

On September 21, 1998, the OCCA declined jurisdiction over the appeal. The OCCA noted that Johnson had failed to submit with his petition in error and supporting brief a certified copy of the state district court's order. The OCCA further noted that a copy of the state district court's order was not otherwise included in the record on appeal since the clerk of the state district court had not filed a post-conviction appeal record with the clerk of the OCCA. The OCCA concluded that Johnson "ha[d] not provided a sufficient record for review." *Id.* at 264. Approximately one week later, on September 28, 1998, the clerk of the state district court submitted to the OCCA a "Notice of Completion" and, presumably, certified copies

---

**2.** Rule 5.2(C)(2) states, in pertinent part, that "[a] petition in error and supporting brief, WITH A CERTIFIED COPY OF THE ORDER ATTACHED must be filed with the Clerk of this Court." Okla. Stat. tit. 22, Ch. 18 App. Rule 5.2(C)(2) (2002 Supp.). This version of Rule 5.2(C) became effective on January 1, 1998.

of the record on appeal. *Id.* at 180. There is no indication in the record, however, that Johnson received notice of this event. On October 8, 1998, Johnson filed with the OCCA a notice of intent to appeal (to federal district court) and a request that the clerk of the OCCA designate the record to federal district court.

On October 19, 1998, Johnson again filed a pro se petition for federal habeas relief. Johnson asserted, as he did in his first habeas petition, that he received constitutionally ineffective assistance of appellate counsel and was denied his due process right to a direct appeal. Johnson also asserted a due process violation arising out of the state district court clerk's failure to transmit certified copies of the record to the OCCA when he attempted to appeal the denial of his second application for post-conviction relief.

The magistrate court issued its report on November 23, 1999, recommending that the petition be denied. With respect to the ineffective assistance of counsel claim, the report concluded the issue was not raised in Johnson's first application for post-conviction relief, and that instead the first application "was directed solely to the issue of whether [he] was denied an appeal through no fault of his own." *Id.* at 389. The report acknowledged that the issue was raised in Johnson's second application for post-conviction relief, but concluded that the OCCA's declination of jurisdiction of the appeal in that proceeding resulted in a procedural bar for purposes of federal habeas review. The report rejected Johnson's assertion that the state district court clerk's failure to timely transmit the record to the OCCA established cause for the procedural default. Instead, the report concluded, Johnson himself was responsible for the OCCA's ruling by failing to submit with his petition in error a certified copy of the state district court's order. The report also rejected Johnson's reliance on the fundamental miscarriage of justice exception, i.e., Johnson's assertion that he was actually innocent of the crimes for which he was convicted. The report noted that the "only factual support" provided by Johnson in support of his assertion was an "unsupported, nonspecific reference to the 'FBI plac[ing] him 16 ½ miles from the scene of the crime.'" *Id.* at 391–92. On May 14, 2001, the district court adopted the magistrate's report and recommendation in its entirety and dismissed Johnson's habeas petition. Although the district court denied a certificate of appealability (COA), this court has granted a COA.

## II.

Johnson contends the district court erred in concluding that his Sixth Amendment claim of ineffective assistance of appellate counsel was procedurally barred. For the reasons that follow, we agree. Moreover, we conclude the claim is meritorious and entitles Johnson to conditional habeas relief.

It is well established that our review of federal habeas claims asserted by state prisoners is circumscribed by the treatment those claims received in state court. If a particular claim was decided on the merits by the state courts, we review the decision under the standards of review set forth in 28 U.S.C. § 2254(d). If a particular claim was "defaulted in state court on an independent and adequate state procedural ground," we recognize the state courts' procedural bar ruling and do not address the claim on the merits "unless cause and prejudice or a fundamental miscarriage of justice is shown." *Maes v. Thomas,* 46 F.3d 979, 985 (10th Cir.1995).

Here, the district court concluded that Johnson's ineffective assistance claim was procedurally barred. In reaching this conclusion, the district court found, as it had in dismissing Johnson's first federal habeas petition, that Johnson's ineffective assis-

tance claim was not raised in his first application for post-conviction relief. Instead, the district court found the claim was first raised by Johnson in his second application for post-conviction relief (which, as previously noted, was filed by Johnson after dismissal of his first federal habeas petition). Noting that the OCCA had declined jurisdiction over Johnson's appeal from the denial of his second application for post-conviction relief, the district court concluded Johnson's ineffective assistance claim was procedurally barred, and that Johnson had failed to establish either cause and prejudice or a fundamental miscarriage of justice.

Johnson presents numerous challenges to the district court's decision. We begin with the most fundamental challenge—did the district court err in concluding that Johnson's ineffective assistance claim was not fairly presented to the OCCA during the course of his initial application for post-conviction relief?

### Claim raised in initial application for post-conviction relief

■ To exhaust state court remedies with respect to a particular constitutional claim, a habeas petitioner must give the state courts a fair opportunity to address the claim. *See Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). "The determination or showing of exhaustion of state remedies is an essential issue or question of fact to be determined by the [district] court as a prerequisite to a consideration of the petition on its merits." *Barber v. Page*, 355 F.2d 171, 172 (10th Cir.1966). Here, Johnson contends the district court erred in finding that the ineffective assistance claim was not raised in his first application for post-conviction relief.

■ Johnson's first application for post-conviction relief asserted that he should be granted an appeal out of time because the failure to timely file an appellate brief rested exclusively on the shoulders of his appellate counsel. Although the application did not specifically cite *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Johnson's counsel all but conceded that he was ineffective. *See* App. at 53 ("His appellate attorney acknowledges that the appeal was dismissed for failure to file a brief, and through no fault of petitioner."). In reviewing the application, the state district court construed it as asserting a claim of ineffective assistance. Thus, in denying the application, the court specifically found that Johnson had "failed to substantiate any sufficient evidence that [his] counsel's conduct fell outside the wide range of reasonable professional assistance." *Id.* at 55. The state district court further concluded that Johnson had "failed to show that counsel's performance was deficient, that is, that the counsel's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* When Johnson appealed the order to the OCCA, he asserted, in pertinent part, that "[a] criminal defendant is entitled to effective assistance of counsel on first appeal as of right and ... is entitled to appeal out of time when denied effective assistance of counsel to perfect direct appeal." *Id.* at 46. In remanding the case to state district court, the OCCA directed the court to conduct an evidentiary hearing to determine, in part, whether Johnson's "appeal was not timely perfected because of appellate counsel." *Id.* at 37. On remand, the state district court conducted a brief evidentiary hearing and found that appellate counsel was at least partly responsible for the failure to timely file an appellate brief. *Id.* at 374 ("In regard to number one, whether the appeal was not timely perfected because of appellate counsel. That is certainly borne out by the evidence and I think admitted and agreed to by all parties."). Despite this

finding, the court denied relief based upon its additional finding that Johnson himself had "contributed to the negligence involved in failing to timely perfect his appeal." *Id.* at 375. When Johnson again appealed to the OCCA, he argued, in part, that "the law impose[d] no duty on a defendant, as opposed to his attorney, to see that his appeal [wa]s filed on time." *Id.* at 341. The OCCA ultimately affirmed the state district court's judgment, concluding Johnson had "failed to establish that he was denied an appeal of his conviction through no fault of his own." *Id.* at 358.

Although it is true that "appeal out of time" proceedings in Oklahoma focus on whether a defendant was denied an appeal "through no fault of his own," it is apparent that claims of ineffective assistance are sometimes intertwined with the "fault" question and can be decided on the merits in the course of such proceedings. In at least two published cases, the OCCA has considered, and in one of them granted, an appeal out of time based on the denial of effective assistance of appellate counsel. *See Paxton v. State,* 903 P.2d 325, 327–28 (Okla.Crim.App.1995) (denying, on basis of laches, petitioner's request for appeal out of time based on denial of effective assistance of appellate counsel); *Young v. State,* 902 P.2d 1089, 1091 (Okla.Crim.App. 1994) (granting petitioner's request for appeal out of time based on appellate counsel's failure to file any pleadings on petitioner's behalf). Moreover, the OCCA has expressly stated that its "appeal out of time" procedure allows a trial court "to resolve factual disputes concerning why an appeal was not timely filed." *Moore v. Gibson,* 27 P.3d 483, 487 (Okla.Crim.App. 2001).

In light of the procedural history of Johnson's first application for post-conviction relief, and in light of Oklahoma precedent, we conclude the district court committed clear error in finding that Johnson did not exhaust his ineffective assistance claim during the course of pursuing his first application for post-conviction relief. Although the OCCA's final affirmance focused on Johnson's purported "fault," the issue of appellate counsel's performance in failing to timely file an appellate brief was fairly presented to the OCCA, both in the initial appeal and again in the second appeal. The state district court's denial of Johnson's application, and the OCCA's affirmance of that denial, necessarily included an evaluation of Johnson's assertion that his appellate counsel was at fault and constitutionally ineffective in failing to timely file an appellate brief. In sum, it is clear from the record that Johnson exhausted his ineffective assistance claim prior to filing his initial federal habeas petition.

We acknowledge that Johnson did not attempt to appeal from the federal district court's dismissal of his initial habeas petition. That failure does not, however, preclude us from examining the exhaustion question and determining when and whether the OCCA addressed Johnson's ineffective assistance claim. The general rule is that "res judicata has no application in [federal] habeas corpus" proceedings. *Calderon v. United States Dist. Ct.,* 163 F.3d 530, 537 (9th Cir.1998) (en banc); *see McCleskey v. Zant,* 499 U.S. 467, 480, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (noting long-standing rule "that res judicata does not apply to a decision on habeas corpus refusing to discharge the prisoner") (internal quotations omitted). Even ignoring this general rule, the district court's order dismissing Johnson's first habeas petition was without prejudice and therefore has no res judicata effect. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Nor is the district court's finding binding on this court under the law of the case doctrine (assuming that Johnson's first and second habeas petitions can be

considered the "same case" for purposes of that doctrine). Under the law of the case doctrine, "a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton,* 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). Whether the "law of the case" doctrine applies to questions of fact, such as whether a particular claim for federal habeas relief has been exhausted, *see Barber,* 355 F.2d at 172, is unclear. *See United States v. Monsisvais,* 946 F.2d 114, 115 n. 2 (10th Cir.1991) (declining to "address under what circumstances findings of fact become the law of the case"). Assuming for purposes of argument that the doctrine generally applies to findings of fact, a court is not bound by the doctrine if it is "convinced that [a finding] is clearly erroneous and would work a manifest injustice." *Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). That is precisely the situation here. The federal district court's initial finding that the ineffective assistance claim was unexhausted was clearly erroneous, and adhering to that finding would work a manifest injustice by forcing Johnson to establish why this court should not adhere to the OCCA's rejection of his second, and entirely unnecessary, application for post-conviction relief on state procedural grounds.

■ We find that Johnson's ineffective assistance claim was fairly presented to the OCCA in the course of his first application for post-conviction relief and was implicitly rejected by the OCCA on the merits. The outcome of his second application for post-conviction relief (i.e., the

OCCA's declination of jurisdiction based upon Johnson's failure to file a certified copy of the state district court's order) is irrelevant to this proceeding. In other words, because the OCCA had a full and fair opportunity to address the merits of the ineffective assistance claim in the course of Johnson's first application for post-conviction relief, it does not matter that a procedural default may have occurred when Johnson again attempted to assert that claim in state court.

*No procedural bar*

■ Even if we assumed that Johnson's ineffective assistance claim was not raised until his second application for post-conviction relief, we would still conclude the claim should be reviewed on the merits. As previously noted, the district court concluded that Johnson's ineffective assistance claim was procedurally barred due to Johnson's failure, in attempting to appeal the state district court's denial of his second application for post-conviction relief, to include with his petition in error a certified copy of the state district court's order. Johnson argues that even if there was a valid procedural default, it should be excused under the "cause and prejudice" exception. We agree.

■ Generally speaking, this court "does not address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." [3] *English v. Cody,* 146 F.3d 1257, 1259 (10th Cir.1998) (citing *Coleman v. Thompson,* 501 U.S. 722, 749–

---

3. There is little doubt that the OCCA's declination of jurisdiction rested on a state law ground "independent" of federal law. In particular, the OCCA's decision rested on Rule 5.2(C) of the Rules of the Court of Criminal Appeals. As previously noted, that Rule states, in pertinent part, that "[a] petition in

error and supporting brief, WITH A CERTIFIED COPY OF THE ORDER ATTACHED must be filed with the Clerk of this Court." Okla. Stat. tit. 22, Ch. 18 App. Rule 5.2(C)(2) (2002 Supp.) (emphasis in original). The Rule further provides that the "[f]ailure to file a petition in error, with a brief, within the

50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546; *see Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (indicating the "cause" standard requires a petitioner to "show that some objective factor external to the defense impeded ... efforts to comply with the State's procedural rules"). Such external factors could, for example, include situations where "some interference by officials ... made compliance impracticable." *Id.* (internal quotations and citation omitted). As for prejudice, a petitioner must show " 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). More specifically, a petitioner must demonstrate "actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Johnson argues that "cause" exists in this case for three related reasons. First, Johnson alleges the copy of the state district court's order mailed to him by the clerk was not certified. Johnson argues that, in light of Rule 5.2(C)'s requirement of a certified copy, "it is not unreasonable to expect that the copy of the order forwarded to [him] in the first instance be certified." Johnson's Opening Br. at 20.

Second, Johnson alleges he "lacked reasonable means—within the state's thirty-day deadline—of obtaining the certified copy that was not given to him in the first instance." *Id.* at 21. In particular, he argues "[h]e could not rely on a request by mail, in light of the unavoidable delays involved in multiple back-and-forth postal deliveries, prison mail-processing, and clerk's office processing, in light of the [OCCA's] thirty-day deadline, and in light of that Court's refusal to extend the benefits of the 'mailbox rule' to post-conviction filings." *Id.* Third, Johnson points out that even though he expressly petitioned the state district court clerk to transmit the record, including the state district court's order, to the OCCA, the clerk failed to transmit the record within the time limits set forth in the OCCA's rules. Johnson argues that certain language in the OCCA's order declining jurisdiction suggests it may have addressed the appeal on the merits had the clerk timely transmitted the record.

The first two factors cited by Johnson, the clerk's failure to mail him a certified copy of the court's order and the difficulties he faced in obtaining such a copy within a tight time-frame, are compelling in our view. To comply with Rule 5.2(C), an appellant is obligated to obtain a certified copy of the district court order from which he or she is seeking to appeal. If Johnson had received a certified copy of the order in the first place,[4] he clearly

---

time period provided, shall constitute a procedural bar for this Court to consider the appeal." *Id.* Rule 5.2(C)(5).

Although Johnson contends otherwise, we conclude the ground is also "adequate." *See Duvall v. Reynolds,* 139 F.3d 768, 797 (10th Cir.1998); *see also Cotner v. Creek County Dist. Ct.,* 911 P.2d 1215, 1217 (Okla.Crim. App.1996) (declining jurisdiction over appeal from denial of application for post-conviction relief because district court order submitted

with petition in error was "not certified as required by Rule 5.2(C)(1)").

4. Rule 5.3(A) of the Rules of the Court of Criminal Appeals requires the clerk of the state district court to mail "a certified copy" of the state district court's order to the petitioner. Although the State half-heartedly argues that the copy sent to Johnson must have been certified, Resp. Br. at 14, it makes no attempt to support this argument with any evidence. In response, Johnson points out that the copy he received from the clerk did

could have complied with Rule 5.2(C) in a timely fashion. Although it can be argued that Johnson could have, and perhaps should have, attempted to contact the clerk to obtain a certified copy of the order, he was operating within a relatively narrow window of time, considering the fact that he was incarcerated and that the OCCA does not recognize any type of "mailbox rule" for pro se inmate litigants. Thus, we conclude that the failure of the clerk to provide him with a certified copy made compliance with Rule 5.2(C) practically impossible.[5] *See Dorman v. Wainwright,* 798 F.2d 1358, 1370 (11th Cir.1986) (concluding that "state's failure to provide [petitioner] with a trial transcript within a reasonable time to perfect his appeal constitute[d] an external factor out of [petitioner's] control that suffice[d] as 'cause' for the dismissal of the direct appeal").

We conclude that the third factor cited by Johnson, the clerk's failure to timely transmit the record to the OCCA, also constitutes "cause" for the procedural default. It is uncontroverted that Johnson filed a timely notice of appeal and designation of record with the state district court clerk. Under the Rules of the Court of Criminal Appeals, this action imposed a duty on the clerk to compile certified copies of the record and submit them to the OCCA within thirty days of the state district court's order. Okla. Stat. tit. 22, Ch. 18 App. Rule 5.3(B)(1) (2002). Had the clerk fulfilled this statutory responsibility, the OCCA would have been in possession of a certified copy of the state district court's order at the time it ruled on Johnson's appeal. Although there still would not have been precise compliance with

Rule 5.2(C) (in that a certified copy of the order would not have been physically attached to Johnson's petition in error), there would have been practical compliance (in that a certified copy of the decision appealed would have been available to the OCCA). The OCCA order declining jurisdiction over Johnson's appeal contains language which suggests the OCCA may have accepted jurisdiction had the record been available to the court. *See* App. at 264 (noting that "[a] copy of the order from the District Court of Comanche County is not part of the record on appeal," and that "[t]he Clerk of the District Court has not filed a post-conviction appeal record in this Court").

As for the question of prejudice, it is clear that Johnson can demonstrate "actual prejudice resulting from the alleged constitutional violation." *Wainwright,* 433 U.S. at 84, 97 S.Ct. 2497. The basis for Johnson's ineffective assistance claim is his assertion that his appellate counsel was negligent for failing to timely file an appellate brief. Assuming appellate counsel was negligent in this regard, the result is that Johnson was deprived of his right to a direct appeal. *See Abels v. Kaiser,* 913 F.2d 821, 823 (10th Cir.1990) (concluding that counsel is constitutionally ineffective by failing to timely perfect an appeal when requested to do so by his client, and presuming prejudice under such circumstances). Clearly, this constitutes "actual prejudice" for purposes of federal habeas review. *See id.*

*Merits of ineffective assistance claim*

 The question we must next address is whether to remand the case to the

---

not contain any type of certification stamp. Aplt. Reply Br. at 10.

**5.** Respondent suggests Johnson should have included the non-certified copy of the order he received from the clerk with his petition in error and supporting brief. Clearly, however,

that would not have been acceptable under the OCCA's rules. Indeed, the OCCA's decision in *Cotner* suggests the OCCA likely would have declined jurisdiction due to Johnson's failure to include a certified copy of the order as required by Rule 5.2(C).

district court to allow it to address the merits of Johnson's ineffective assistance claim, or whether we should address the claim ourselves. The general rule is "that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). This general rule gives way, however, "where the proper resolution is beyond any doubt," or "where injustice might otherwise result." *Id.* at 121, 96 S.Ct. 2868 (internal quotations omitted). In our view, both exceptions are applicable here.

■ It is uncontroverted that Johnson's appellate counsel was negligent in failing to timely file an appellate brief. Not only did counsel repeatedly acknowledge his own negligence during the course of the state post-conviction proceedings, the state district court ultimately agreed that Johnson's appellate counsel was negligent (even though it rejected Johnson's application for post-conviction relief). Although the court found, and the OCCA agreed, that Johnson had intentionally abandoned his direct appeal by failing to contact either the state district court or the OCCA regarding the status of his appeal during the seven-month time period between the filing of the trial transcripts and the dismissal of the appeal by the OCCA, we conclude this was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]." 28 U.S.C. § 2254(d)(2). During the brief evidentiary hearing conducted by the state district court, Johnson testified that he had always wanted to appeal his convictions and had relayed that desire to his appellate counsel. Johnson further testified that he was not aware of the deadline for filing the appellate brief until it had passed and he was curious why his appellate counsel had failed to meet the deadline. Finally, Johnson testified that, to his knowledge, he had not done anything that would have resulted in dismissal

of his appeal. In our view, Johnson's testimony clearly and convincingly demonstrates that the state district court's finding of abandonment was erroneous. *See* 28 U.S.C. § 2254(e)(1). For the state district court to infer that Johnson intended to abandon his appeal, based merely on the fact that he did not personally contact the courts regarding the status of his appeal during a seven-month period, is not only completely contrary to Johnson's testimony but entirely inconsistent with fundamental notions of due process. *See generally Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (explaining why the intricacies of criminal appellate proceedings, which would be "hopelessly forbidding" to a layperson, demand that a criminal defendant have the assistance of counsel on appeal).

■ As for the applicable law, it is beyond dispute that a criminal defendant is entitled to the effective assistance of counsel in his first appeal as a matter of right. *Evitts*, 469 U.S. at 396–97, 105 S.Ct. 830.

> In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules which to a layperson would be hopelessly forbidding. An unrepresented appellant—like an unrepresented defendant at trial—is unable to protect the vital interests at stake.

*Id.* at 396, 105 S.Ct. 830.

■ Where, as here, appellate counsel negligently fails to perfect an appeal, counsel's failure necessarily constitutes ineffective assistance. *See Evitts*, 469 U.S. at 397, 105 S.Ct. 830 (affirming lower courts' determination that appellate counsel was

ineffective for failing to perfect direct appeal by filing "statement of appeal" as required by Kentucky law); *Abels,* 913 F.2d at 823 (concluding that appellate counsel's failure to file appellate brief on behalf of client "was a violation of [the client's] constitutional right to effective assistance of counsel"); *Hannon v. Maschner,* 845 F.2d 1553, 1558–59 (10th Cir. 1988) (concluding that appellate counsel's failure to perfect direct appeal would result in deprivation of defendant's right to effective assistance of counsel unless defendant knowingly and intelligently waived right to appeal). More specifically, the negligent failure to perfect an appeal "amount[s] to a complete denial of assistance of counsel during a critical stage" of the criminal proceedings. *United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011, 1017 (7th Cir.1988); *see Evitts,* 469 U.S. at 394 n. 6, 105 S.Ct. 830 (stating it is "difficult to distinguish" the situation of a criminal defendant whose appellate counsel fails to perfect a direct appeal "from that of someone who had no counsel at all").

Prejudice is presumed in circumstances such as those presented here. *See Hannon,* 845 F.2d at 1558; *see also United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial."); *Thomas,* 856 F.2d at 1016 (holding that *Strickland's* prejudice inquiry is inapplicable in cases where appellate counsel failed to perfect direct appeal). As we noted in *Abels,* "when courts have found counsel constitutionally inadequate, because ... counsel failed to properly perfect an appeal, they do not consider the merits of arguments that the defendant might have

made on appeal." 913 F.2d at 823. The rationale for this position was outlined by the Supreme Court over thirty years ago: "Those whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings." *Rodriquez v. United States,* 395 U.S. 327, 330, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969).

■ The only remaining question is the relief to which Johnson is entitled. Prior precedent indicates that the appropriate relief in these circumstances is to remand to the district court with directions to grant a writ of habeas corpus ordering the petitioner's release unless state authorities afford him an appeal out of time. *E.g., Evitts,* 469 U.S. at 390–91, 105 S.Ct. 830; *Myers v. Johnson,* 76 F.3d 1330, 1339 (5th Cir.1996); *Baker v. Kaiser,* 929 F.2d 1495, 1500–01 (10th Cir.1991); *Abels,* 913 F.2d at 823.[6]

### III.

The judgment of the district court is REVERSED and the case is REMANDED. The district court is directed that the case be held in abeyance for no longer than ninety days during which time the State of Oklahoma, by whatever procedure it deems appropriate, may grant Johnson leave to appeal out of time and provide him assistance of counsel. If Oklahoma grants leave to appeal out of time, this proceeding shall be dismissed. If the State fails to grant the appeal within ninety days from the date of the issuance of our mandate, the writ shall issue releasing Johnson.

---

**6.** Because we conclude that Johnson's ineffective assistance of counsel claim is meritorious and entitles him to federal habeas relief, we find it unnecessary to address his due process claim.

Johnson's motion to supplement the record is GRANTED.