**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 25, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAMES CLIFFORD STUART,

Petitioner-Appellant,

v.

RON WARD, Warden,

Respondent-Appellee.

No. 05-7114
(D.C. No. 02-CV-315-S)
(E.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before **HENRY, BALDOCK**, and **MURPHY**, Circuit Judges.

---

James Clifford Stuart, an Oklahoma state prisoner serving a sentence of life without parole, appeals from a district court order denying habeas relief from his conviction for first-degree murder. He raises claims of ineffective assistance of trial, appellate, and post-conviction counsel, as well as unfairness in state post-conviction proceedings. For substantially the same reasons as the magistrate judge set forth in her report and recommendation, we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

On December 11, 1997, Stuart shot and killed his brother-in-law, Robert Burris. The central issue at trial was whether the killing was accidental or deliberate.

Robert Midgett, an eyewitness, testified that Stuart and Burris were arguing inside Burris' trailer home when Stuart told Burris, "[Y]ou better get your gun because I'm going to come back and I'm going to shoot you." R., Tr. Vol. 2 at 423. Stuart then left in a car and returned in a few minutes with a revolver. According to Midgett, Stuart appeared "raving mad" as he exited the car and fired three rounds into the ground and the home. *Id.* at 424. Burris came out, walked up to Stuart, and was shot. Burris leaned forward on Stuart and then both of them fell to the ground, where Burris was shot again. Midgett and Stuart carried Burris into the home, and Stuart "dialed 911." *Id.* at 427; *see also id.* at Tr. Vol. 3 at 464. Stuart gave the phone to Midgett and left to go tell his wife that Burris "need[ed] [her]." *Id.*, Tr. Vol. 4 at 816. Burris died at the scene.

Curtis Whitekiller, one of Burris' friends, testified that, later in the evening, Stuart gave him the revolver and said that Burris wanted it "throw[n] . . . in the river." *Id.*, Tr. Vol. 3 at 533. Midgett's wife testified that Stuart telephoned her that evening and asked if Burris was dead. When she said "Yes," he responded, "He deserved it." *Id.* at 672. Stuart fled to Illinois, where he was arrested.

Stuart testified that he did not have an argument with Burris; rather, he maintained that he was arguing with Midgett, when Midgett "pulled a gun and shot it in the house." *Id.*, Tr. Vol. 4 at 867. Stuart claimed that he then went outside to his car, retrieved a revolver, and fired two shots to frighten Midgett. Stuart further testified that Burris intervened in the dispute and was accidentally shot while grabbing the revolver. Finally, Stuart denied asking Whitekiller to dispose of the revolver, stated that he did not call to speak with Midgett's wife, and claimed that he fled because Midgett told authorities that he "just killed [Burris] for no reason at all." *Id.* at 877.

The jury found Stuart guilty, and the court imposed a sentence of life without the possibility of parole. Stuart appealed to the Oklahoma Court of Criminal Appeals (OCCA), arguing that (1) the trial court erred in excluding expert psychological testimony that Stuart suffers from anxiety; (2) there was insufficient evidence that Stuart deliberately killed Burris; and (3) his sentence was excessive. The OCCA affirmed.

Stuart then filed a pro se application for state post-conviction relief, arguing, among other things, that his trial and appellate attorneys were ineffective. The court appointed Stuart an attorney, held an evidentiary hearing, and denied relief in an order filed May 31, 2002, that was served on June 12. Stuart appealed to the OCCA.

On July 25, Stuart filed his petition in error and supporting brief in the OCCA. But because the petition and brief were filed more than thirty days after the May 31 order was filed or served, the OCCA dismissed the appeal as untimely.

Next, Stuart filed a pro se § 2254 habeas petition in federal court in Oklahoma, making a variety of arguments, including that (1) he was denied "a full and fair" post-conviction evidentiary hearing, Aplt. App. at 27; (2) Oklahoma's "procedures for post[-]conviction appeals are not fair," *id.*; and (3) trial and appellate counsel were ineffective. A magistrate judge recommended denying the petition because attacks on post-conviction fairness are not cognizable on habeas review and because procedural bar doomed the ineffective-assistance claims. The magistrate judge also warned Stuart that "[f]ailure to file . . . written objections to the . . . recommendation[ ] [within ten days] may result in waiver of appellate review." *Id.* at 48-49. Three weeks later, in the absence of any objections, a district judge adopted the recommendation and denied Stuart's habeas petition.

Stuart retained counsel and appealed. We issued Stuart a certificate of appealability on the issues identified in his opening brief: (1) ineffective assistance of trial counsel in preparing Stuart to testify; (2) ineffective assistance of trial counsel in failing to request a competency hearing; (3) ineffective assistance of appellate counsel; and (4) ineffective assistance of post-conviction

-4-

counsel and unfairness in the state post-conviction proceedings. This court also ordered Stuart's counsel to provide "specific facts" regarding earlier assertions he had made about Stuart's failure to object to the magistrate judge's recommendation. Order at 2 (filed Feb. 12, 2007). Counsel did not comply.

For the reasons expressed below, we conclude that (1) Stuart is procedurally barred from asserting ineffective assistance of counsel in the preparation of his trial testimony; (2) the state post-conviction court's rulings on competency and counsel's handling of competency pass scrutiny under the Antiterrorism and Effective Death Penalty Act (AEDPA); (3) Stuart is procedurally barred from asserting ineffective assistance of appellate counsel; and (4) Stuart's claims of ineffective post-conviction counsel and unfair proceedings are not cognizable on habeas review. We also conclude that Stuart's failure to timely object to the magistrate judge's recommendation relegates his claims to review for plain error, *see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005), which occurs when there is (1) error, (2) that is plain, (3) that affects substantial rights, and that (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings, *United States v. Sinks*, 473 F.3d 1315, 1321 (10th Cir. 2007). But because we find no error under our normal standards or review, we do not proceed to the more exacting second, third, and fourth prongs of plain-error review.

## II. DISCUSSION

### A. Standards of Habeas Review

Under AEDPA, when the merits of a claim have been adjudicated in state court, a federal court will grant habeas relief only if the applicant shows that the state court decision was (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). In conducting this deferential inquiry, we presume that the factual findings of the state courts are correct, and we place the burden of rebutting this presumption by clear and convincing evidence on the petitioner. *Id.* § 2254(e)(1).

We review de novo whether a petitioner's claims are procedurally barred. *See Ballinger v. Kerby*, 3 F.3d 1371, 1374 (10th Cir. 1993).

### B. Application

#### 1. Assistance of Trial Counsel in Preparing Testimony

Stuart argues that his trial counsel provided ineffective assistance "when they failed to prepare [him] to take the stand." Aplt. Opening Br. at 10. The OCCA found this claim jurisdictionally barred, as it was presented in an untimely appeal. *See* Okla. Stat. Ann. tit. 22, ch. 18, App. R. 5.2(C)(2) (requiring that a petition in error and the supporting brief be filed in the OCCA within thirty days from the filing of the final order). On habeas review, we do "not address issues

that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Anderson v. Sirmons*, 476 F.3d 1131, 1140 (10th Cir. 2007) (quotation omitted). The OCCA's declination of jurisdiction based on Rule 5.2(C)(2) constitutes an independent and adequate state procedural ground. *See Johnson v. Champion*, 288 F.3d 1215, 1227 n.3 (10th Cir. 2002). Thus, our review ends unless Stuart has demonstrated either cause for the default and prejudice from the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Stuart contends that his failure to timely appeal to the OCCA was caused by "unforeseeable facility lockdowns, shakedowns, library closings, and equipment failure." Aplt. Opening Br. at 21. The magistrate judge rejected Stuart's assertion of cause, simply stating that he had adequate time to prepare the one-page petition in error and the six-page accompanying brief. We do not believe that the "cause" issue can ordinarily be decided solely on the basis of a page count in relation to appeal time. But even if we were to find "cause" for Stuart's procedural default, he has not demonstrated actual prejudice.

"[A] petitioner must demonstrate actual prejudice resulting from the alleged constitutional violation." *Johnson*, 288 F.3d at 1227 (quotation omitted). Stuart has not suggested how his trial attorneys' purported failure to prepare him to

testify prejudiced his defense. Indeed, Stuart does not claim that he provided damaging testimony or that he omitted favorable testimony. And our review of the record indicates that he testified on direct and cross-examination consistently with his theory of the case, which was that he accidentally shot Burris.

Nor has Stuart demonstrated that a miscarriage of justice would occur if this ineffective-assistance claim is procedurally barred. "To meet this test, a criminal defendant must make a colorable showing of factual innocence," *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000), such "that no reasonable juror would have found the defendant guilty," *Ellis v. Hargett*, 302 F.3d 1182, 1186 n.1 (10th Cir. 2002) (quotation omitted). Stuart does not direct our attention to any evidence of his innocence. In his reply brief to the federal district court, Stuart asserted innocence based on his belief that Midget testified falsely. But that is not an "affirmative[ ] demonstrat[ion]" of innocence. *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999). "A criminal defendant is required to provide evidence that does more than simply undermine the finding of guilt against him or her." *Id.* (quotation omitted). After carefully reviewing the record, we conclude that Stuart has failed to come forward with evidence that he is actually innocent of first-degree murder.

Stuart is, therefore, procedurally barred from asserting ineffective assistance in the preparation of his trial testimony.

## 2. Assistance of Trial Counsel in Challenging Competency

Stuart next argues "that during two periods in his trial he experienced hypoglycemic episodes" which rendered him incompetent, Aplt. Opening Br. at 14, and that trial counsel was ineffective for not seeking a competency hearing "on learning that [he] had experienced a hypoglycemic event," *id.* at 15. We face a variety of potential restrictions in reaching the merits of this argument. First, competency issues were not raised in Stuart's federal habeas petition, and therefore, those issues would ordinarily be deemed waived on appeal. *See Johnson*, 288 F.3d at 1229 (stating "that a federal appellate court does not consider an issue not passed upon below" unless "the proper resolution is beyond any doubt" or "injustice might otherwise result" (quotations omitted)). Second, while Stuart claimed in his state post-conviction proceedings that his attorneys should have notified the trial judge that there was a competency issue, the issue is subject to procedural bar, as it was rejected by the OCCA as part of Stuart's untimely post-conviction appeal. *See supra* Part II.B.1. To the extent, however, that Mr. Stuart is attempting to advance a competency claim based on substantive due process, neither waiver nor procedural bar would apply. *See Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999); *Castro v. Ward*, 138 F.3d 810, 817 n.3 (10th Cir. 1998). Third, because the state district court, when resolving Stuart's post-conviction application, addressed Stuart's competency and his counsel's assistance, any review of the merits would be deferential under

-9-

AEDPA. Given this morass of restrictions, we conclude that the most efficient course is to proceed to the merits, overlooking any waiver or procedural bar. *See Spears v. Mullin*, 343 F.3d 1215, 1256 (10th Cir. 2003). In doing so, we first review Stuart's overall claim that he was incompetent for two periods at trial, and then we turn to his trial counsel's failure to request a competency hearing.

Competence to stand trial requires that the defendant have (1) "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and (2) "a rational as well as factual understanding of the proceedings against him." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quotations omitted). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry [about the defendant's competence] is required." *Drope v. Missouri*, 420 U.S. 162, 180 (1975).

The state post-conviction judge—who was the same judge that presided over Stuart's trial—found Stuart's competency claims completely refuted by the record. Specifically, during the two periods that Stuart was allegedly experiencing hypoglycemic episodes, the record reveals that he had clear and cogent discussions with the trial judge regarding trial events and how he wished to proceed. Moreover, shortly after the purported second episode, Stuart took the witness stand, offering clear testimony and providing "steady and consistent protestations" on cross-examination. Aplee. App. at 125. And after completing

his testimony, Stuart participated in the jury instruction conference, again displaying an understanding of the proceedings through colloquy with the court. Based on this record, the court ruled that Stuart had "a clear, unequivocal and competent understanding of the proceedings at the times [he claims] that he was suffering from diabetic shock." *Id.* at 127. We agree, and conclude under AEDPA that this ruling is not contrary to or an unreasonable application of federal law, or based on an unreasonable factual determination.

Additionally, with no record indication of incompetency, trial counsel cannot be held ineffective for not requesting a competency hearing. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that an ineffective assistance claim requires deficient performance that prejudices the defense); *cf. United States v. Herrera*, 481 F.3d 1266, ___, 2007 WL 987409, at *5 (10th Cir. 2007) (stating that a defendant is entitled to a hearing when there is a bona fide doubt about his competency). The state post-conviction court applied *Strickland* and found no deficits in the performance of Stuart's defense attorneys. We discern no AEDPA error.[1]

---

[1]     Stuart has submitted a letter from a medical doctor who has never examined or treated him but believes that hypoglycemia would have caused Stuart to suffer "retrograde amnesia" at trial and would have interfered with his ability to understand and process spoken words. Aplt. App. at 4. Even if we were somehow able to consider this letter, submitted for the first time on appeal, we could not conclude under AEDPA that the state post-conviction court's application of federal competency law was unreasonable.

### 3. Assistance of Appellate Counsel

Stuart next claims that his counsel on direct appeal was ineffective for not "rais[ing] the issues of ineffective assistance of trial counsel and . . . competency to stand trial." Aplt. Opening Br. at 17. This claim is subject to procedural bar because it was rejected by the OCCA as part of Stuart's untimely post-conviction appeal. *See supra* Part II.B.1.

Moreover, the procedural bar is unavoidable. Even if we assume "cause" as we did above, Stuart cannot demonstrate "prejudice." While his counsel on direct appeal neglected to raise the issues of competency and ineffective assistance, that did not prevent Stuart from having those issues decided on the merits by the state district court on post-conviction. And even if those issues had been raised on direct appeal, we believe they would have met the same fate as they did on post-conviction.

### 4. Post-Conviction Proceedings

Lastly, Stuart contends that the state post-conviction proceedings violated due process because (1) he received ineffective assistance during the evidentiary hearing; and (2) the OCCA's rules do not require a hearing before that court dismisses an untimely post-conviction appeal. Assuming that both of these points were raised in Stuart's federal habeas petition, and therefore, are not waived on appeal, *see Johnson*, 288 F.3d at 1229, they are, nevertheless, meritless because such challenges are not cognizable on habeas review, *see Coleman*, 501 U.S. at

752 (stating that a habeas "petitioner cannot claim constitutionally ineffective assistance of counsel in [state post-conviction proceedings]"); *United States v. Dago*, 441 F.3d 1238, 1248 (10th Cir. 2006) (observing that "due process challenges to post-conviction procedures fail to state constitutional claims cognizable in a federal habeas proceeding").

### III.  CONCLUSION

Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court


Robert H. Henry
Circuit Judge